**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| INTERNATIONAL ASSOCIATION | ) | |
| OF SHEET METAL, AIR, RAIL AND | ) | |
| TRANSPORTATION WORKERS – | ) | |
| TRANSPORATION DIVISION | ) | |
| | ) | |
| **Plaintiff** | ) | **Case No.:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| CSX TRANSPORTATION | ) | |
| CORPORATION | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**PLAINTIFF INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL**
**AND TRANSPORTATION WORKERS – TRANSPORTATION DIVISION**
**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**
**UNDER THE RAILWAY LABOR ACT**

Plaintiff, the Transportation Division of the International Association of Sheet Metal, Air,

Rail and Transportation Workers ("SMART-TD") seeks declaratory judgment pursuant to 28

U.S.C. §§ 2201 and 2202, and injunctive relief against Defendant CSX Transportation Company

("CSX" or "the Carrier").

**JURISDICTION AND VENUE**

1.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal

question), 1337 (Act regulating commerce, *viz.*, the Railway Labor Act, 45 U.S.C. § 151, *et seq.*),

and 2201 (declaratory judgments).

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (c)

because CSX operates through this judicial district and because CSX is subject to personal

jurisdiction here.

## PARTIES

3.      Plaintiff SMART-TD, formerly United Transportation Union, is the duly authorized representative for the purposes of the Railway Labor Act ("RLA" or "the Act") of the crafts or classes of train service employees, including Conductors, employed by CSX, and is a "representative" as defined by Section 1 Sixth of the RLA, 45 U.S.C. § 151 Sixth.  SMART-TD is located at 24950 Country Club Blvd., Ste. 340, North Olmsted, OH 44070.

4.      Defendant CSX is a carrier by rail as defined in the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10102, and a carrier as defined in Section 1 First of the RLA, 45 U.S.C. § 151, First.  CSX is headquartered at 500 Water Street, 15th Floor, Jacksonville, FL, and operates within this judicial district.

## CLAIM FOR RELIEF

### Collective Bargaining under the Railway Labor Act

5.      Collective bargaining between railroads and their employees' representatives over rates of pay, rules and working conditions is governed by the RLA. Collective-bargaining agreements ("CBA") thereunder are amended through the service of written notice of intended changes in agreements affecting rates of pay, rules or working conditions, pursuant to Section 6 of the RLA, 45 U.S.C. § 156. Such proposals, called "Section 6 Notices," are negotiated in conferences between representatives designated and authorized by the carrier or carriers, and by the collective bargaining representative(s) of their employees. 45 U.S.C. §§ 152 Second, 156. If conferences fail, the dispute is subject to mediation by the National Mediation Board ("NMB"). 45 U.S.C. § 155 First. If mediation fails, the President of the United States may appoint a Presidential Emergency Board ("PEB") to investigate and issue recommendations for settlement of the dispute. 45 U.S.C. § 160. Until these procedures are exhausted, and for thirty days

2

thereafter, parties must maintain the status quo established by existing agreements. 45 U.S.C. §§ 152 First, 152 Seventh, 156, 160.

### The Status Quo Requirement under the Railway Labor Act

6. Pursuant to § 2 First, 45 U.S.C. § 152 First, the Act requires that the parties make and maintain agreements. As noted, the Act also provides very specific and mandatory procedures for how agreements can be changed or modified. Until these procedures are exhausted, and for thirty days thereafter, parties must maintain the status quo established by existing agreements. 45 U.S.C. §§ 152 First, 152 Seventh, 156, 160.

7. Section 2 First of the RLA, provides:

It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to <u>make and maintain agreements concerning rates of pay, rules, and working conditions,</u> and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. § 152 First (emphasis added).

8. Furthermore, the RLA mandates a very specific procedure to change working conditions. Section 6 of the RLA, provides:

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice.

45 U.S.C. § 156.

9. Taken together, these sections of the RLA require carriers to maintain the status quo with respect to rates of pay, rules, and working conditions until the mandatory notice, negotiation, and mediation procedures of the Act are completed.

10.     Federal courts are empowered to issue injunctions to stop unilateral action by a rail carrier during this process of resolution.

11.     SMART-TD and CSX are parties to several agreements that control and detail the terms and conditions of employment for the class and/or craft of train service employees represented by SMART-TD.

12.     This action involves CSX's unilateral change of the CBA in violation of the RLA, specifically designated two separate and distinct …trainmen's on/off duty locations. Through its actions, CSX has unlawfully changed those agreement provisions without bargaining.

### Trainman On/Off Duty Locations Under the Controlling CBA

13.     When performing work for CSX, trainmen have a designated location where they report for duty to begin their workday, and a location where they go off duty at the conclusion of their workday. The parties negotiated a provision in their CBA which dictates that these locations must be the same, unless the parties otherwise agree.

14.     Article 32 of the CBA between CSX and SMART-TD states, in pertinent part: "Trainmen will have a designated point for going on duty and a designated point for going off duty; the points shall be the same, unless otherwise agreed." (emphasis added).

15.     CSX has long recognized its obligations under Article 32, including by letter dated June 12, 2019, regarding an unrelated incident concerning CSX's use of different on/off duty locations for trainmen in Waycross, GA. In said letter, CSX affirmed "that trainmen will have the same on/off duty point unless otherwise agreed to."

16.     Of particular relevance here, CSX's operations include the use of trainmen operating trains from Birmingham, AL, Louisville, KY, and Evansville, IN into Nashville, TN. Once in Nashville, trainmen will spend their off-duty time at a hotel and, once on duty again,

4

will operate a train back to their original location.

17.     Despite the unambiguous language contained in the CBA, and CSX's prior commitment to adhere thereto, in November of 2021, CSX unilaterally began requiring trainmen operating into Nashville to go off duty at Radnor Yard, the rail yard they were operating their trains into. The trainmen then traveled to the hotel. When said trainmen began their work the next day, CSX began requiring them to go on duty at the hotel where they stayed.

18.     SMART-TD did not agree to CSX's change in on/off duty locations, which resulted trainmen running trains into Nashville having different on duty and off duty locations.

## Communications Between SMART-TD and CSX

19.     On November 5, 2021, the parties met to discuss CSX's requirement that trainmen operating into Nashville have separate on/off duty points, with SMART-TD asserting that such violated Article 32 of the CBA and the June 12, 2019, letter of understanding following mediation.

20.     Following the meeting, CSX sent a nonsensical follow-up letter dated November 12, 2021. That letter recognized that requiring individual employees to have different on/off duty locations violated the agreement, but mischaracterized SMART-TD's position, stating, "[y]ou claim all trainmen at a particular location must have the same on and off duty points, in contrast to each trainman individually having the same on and off duty point." CSX then stated that SMART-TD's position with respect to Article 32 would create "an absurd result," and denied any breach of the CBA or unilateral change in working conditions.

21.     By letter dated November 15, 2021, SMART-TD responded to CSX, clarifying that contrary to CSX's statement, the issue involved individual trainmen who were now required

to go off duty at Radnor Yard and then on duty the next day at the hotel, the exact scenario CSX seemingly admitted would be a violation of the Article 32 in its November 12, 2021, letter.

22.     The parties met again on November 16, 2021, wherein CSX labor relations stated that it could only provide advice to CSX's operations department, which actually sets the on/off duty locations for employees. CSX further stated that it would not change the way crews were being handled in Nashville and they would continue to require employees to have separate on/off duty locations.

23.     To date, CSX has continued to require individual trainmen operating trains into Nashville to have separate on/off duty locations in violation of Article 32 of the CBA.

### SMART-TD's Claim for Declaratory and Injunctive Relief

24.     Through its actions, CSX has attempted to change the parties' agreements without bargaining.

25.     Despite the Union's best efforts to resolve the matter, CSX has refused and has maintained that it has the right to unilaterally alter the parties' agreements by altering the agreed-upon vacancy-fill process.

26.     By its actions set forth above, CSX is violating it obligation to make and maintain agreements as required by Section 2 First and Section 6 of the RLA, 45 U.S.C. §§ 152 First, 156, and has violated the status quo requirements, entitling SMART-TD to declaratory and injunctive relief.

27.     By its actions set forth above, CSX has failed to negotiate changes and maintain the status quo during such period in violation of Section 2 First and Section 6 of the RLA, 45 U.S.C. §§ 152 First, 156, entitling SMART-TD to a status quo injunction.

**WHEREFORE,** Plaintiff requests that this Court:

A.      Issue a Declaratory Judgment that CSX's actions unlawfully change the status quo and violate its obligations under the RLA;

B.      Issue injunctive relief enjoining CSX, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it from continuing to require trainmen to have separate on/off duty locations;

C.      Award SMART-TD its costs and attorney's fees incurred in this proceeding; and

D.      Grant SMART-TD such other and further relief as the Court deems just and proper.

Dated: May 5, 2022

/s/ Shawn M. McKinley
SHAWN M. MCKINLEY
Assistant General Counsel
KEVIN C. BRODAR
General Counsel
SMART-TD
24950 Country Club Blvd., Ste. 340
North Olmsted, OH 44070
Tel:  (216) 228-9400
Fax: (216) 228-0937
Email: kbrodar@smart-union.org
Email: smckinley@smart-union.org

*Counsel for Defendant International Association of Sheet Metal, Air, Rail and Transportation Workers – Transportation Division ("SMART-TD")*